Eric Holder, Jr. Mr. Brock. Good morning, Your Honor. It's James Tenbrook on behalf of the appellant. First, as I was taking a fresh review of this case, I noted an apparent inconsistency that I wanted to correct or bring to this court's attention. In the immigration judge's decision, she discusses how he was going to be fined about $20,000 RMBs for having a second child, and then subsequently talks about how he testified that it cost him $20,000 to $30,000 to come to the United States. And I thought to myself, well, geez, if he's going to pay $20,000 to come to the United States, why doesn't he just pay the fine and stay in China? So I'm going to presume that this court would probably see that. Now, I looked at the record on this, and the record beginning, it's a transcript dated August 6, 2012, begins on page 155. He says that he didn't pay that yet. He was supposed to pay that when he got to the United States. So I think that's an important thing to note, because I know I picked that up on a fresh reading of this case, and I just want to make sure that's clear. The main issue that I can see in this case is how much ineffectiveness is needed in order to reopen this case. I think the ineffectiveness assistance of the two attorneys that represented him was abhorrent. I think that you could see, especially in my discussion in the reply brief, about how they handled the FDL report and how a simple conversation would have remedied, easily remedied the situation. And I think besides that, obviously, and I'm going to talk more about the birth certificate in a second, but I think more, I mean, how much is needed? I mean, we've got four or five things here. I mean, there's not only the birth certificates. There's a significant, what the immigration judge calls the most significant inconsistency was whether the wife was sterilized. Well, that was explained because the initial attorney, Ming, mistranslated a word, and she essentially admits to mistranslating a word. It had to do with whether it was past tense or future tense of a word. His version was she would be sterilized, but the Ming translated she was sterilized, and he goes into court and says she would be sterilized, and the immigration judge says your testimony is inconsistent. Well, that was because Ming submitted a mistranslated affidavit. We have birth certificates which were translated into Spanish. The immigration judge didn't know why, raised questions. Had one of these attorneys talked to Mr. Chen for 10 minutes, they would have realized that what happened there was he, back in 2004, was thinking of traveling to Spain, and therefore he had those birth certificates translated into Spanish. And then lastly, I mean, not lastly, another discrepancy that the immigration judge found important was the age discrepancy and the age of the daughter, and it was two years off because of a process called age reckoning that the Chinese used. So in any event, now obviously the board got hung up on the birth certificate and the respondent's testimony regarding the birth certificate and claimed that he should have known that the birth certificates were inauthentic. Now, I mean, as you can see that I've argued in my reply brief, this guy is a, he's born from farmers, he's a farmer from the hinterlands of China. You know, he testified consistently that he thought they were okay because he got them from a public notary office. Now, I guess if I were putting myself in your shoes on this case, you know, I'm aware of the principle that somebody should, we have to hold people to a certain standard. They should know something's wrong. And if we don't maintain that consistently, then we're just going to have a mess on our hands. Now, I think that's obviously a good standard to hold. It's very important. It's a very old standard. But here I think there may be some exceptions worth looking at. This is a person who's a refugee. He's not from the United States, not from a U.S. Commonwealth country, or I assume British Commonwealth country. And here further, that mistake was mixed, I would say, with ineffective assistance to counsel because they did not bring to his attention that, hey, there's something wrong here. Let's have a discussion. So to me, there's a clear abuse of discretion here, not only because the board decided to use this one issue of the birth certificate, but also because it ignored all the other evidence and how we corrected or how the evidence could have been corrected at his original hearing. And therefore, he did not have a fair hearing. And I would ask this court to reverse and remand. If there's any other ---- Thank you, Mr. Brook. Mr. Jones? Okay, thank you. May it please the Court, good morning. Tracy Jones appearing on behalf of the respondent, Eric H. Holder, Jr. The court should deny the petition for review in this case because the agency did not abuse its discretion in denying his motion to reopen based on ineffective assistance of counsel. This court has held that despite complying with the procedural requirements under matter of Lozada, the petitioner must demonstrate that he suffered some type of prejudice. Here, the petitioner failed to show that. This court has held that prejudice is found when ---- Well, wasn't that mistake about whether she would be or had been sterilized, wasn't that an important mistake by his lawyer? Well, Your Honor, in his asylum application, he indicated that his wife was sterilized. Then in his testimony, he indicated that his wife was not sterilized. So he actually signed the asylum application indicating that everything in the asylum application was true and correct. So even outside of the translation error, the petitioner should have ---- Well, was he represented by Ming when he signed his application? Yes, Your Honor. Well, Ming didn't represent him adequately. I'm sorry? Ming didn't represent him adequately. Well, Your Honor, according to the record, there's no evidence that she did not, that she provided an adequate representation. Well, the mistranslation was serious. Well, that's what petitioner is using as a reason as to why the inconsistency was there. In her statement or in her response to his allegations of ineffective assistance of counsel, she did indicate that she switched the word request with forced. But that wasn't merely the only inconsistency in his testimony and between the testimony and evidence. And in fact, the agency didn't even rely on those inconsistencies. It was merely the submission of the fraudulent documents which---- But he seems to have been rather confused, Chen. And he didn't get much help from Ming. And, you know, as Mr. Brode pointed, this is not a highly educated person. So it's easy for him to be confused. Well, Your Honor, in this case, the petitioner did contact his family in China to obtain the birth certificates of his son because, in essence, that is the core of his claim, that he suffered persecution and fears future persecution because of his violation of the family planning policy. But is it true he just comes from some farming family somewhere in China? That could be true, Your Honor. They're class people. They're just farmers. That could be true, Your Honor. But he still obtained these documents that even himself, he admitted that he would not be able to obtain, quote-unquote, birth certificate documents because his son was in violation of the family planning policy and was unable to---- Can I go back to the more fundamental thing again? Maybe I misunderstood it or don't understand it. Okay. What was the correct translation? Was she sterilized or would be sterilized? Well, based on the record, it was inconsistent. But the petitioner testified that she was not sterilized. But his written asylum application indicated that she was. And even in one of his witnesses' affidavit, it indicated that his wife had undergone a forced involuntary abortion. I thought Ming acknowledged making a translation error. She did, Your Honor. She said she indicated that she switched the word forced with request. But she says that it was never, that the translation was not to say ordered. She indicated that in her response. But as I mentioned earlier, the inconsistency in regards to the translation is not what the agency relied on in finding that reopening wasn't warranted in this case. The petitioner submitted two fraudulent documents. Now, you said earlier that he was concerned because he had violated the family planning law. That's correct, Your Honor. Well, why isn't that a ground for asylum? Because he did not demonstrate that he was actually eligible. He submitted fraudulent documents with regards to the birth of the second child that would have been considered the violation for the family planning policy. So outside of the inconsistencies in his testimony, he still submitted these two documents that DHS's FDL laboratory indicated were fraudulent. But was he violating the family planning policy? Well, he didn't submit sufficient credible evidence that the second child actually exists. And that was the problem. Well, the birth certificates were fraudulent, Your Honor. You think he made up the second child? I can't say. All I can say is what the record says, Your Honor. There was evidence from a lawyer who had, I think, adopted his brother or something like that? Yes, that would be Mr. Meredith. Who saw both children. Well, that's what he indicated in his affidavit. Yes. But then he kind of flip-flopped on that as well in his testimony. Because at one point he indicated that he actually sat down and spoke with Chen. Then later he indicated that I never met Chen, indicated I never met Meredith, I didn't meet him until I came to the United States. So there were a lot of inconsistencies in the testimony. But, again, the agency denied reopening because of the submission of the fraudulent documents. Now, this court has determined that even if a petitioner is deemed credible, the immigration judge has the discretion. If there's a one-child policy, how do you get a valid birth certificate for that second child in China? How do you do that? And that's the government's point, Your Honor. The petitioner in this case indicated that he would not be able to obtain a valid birth certificate. So it's just a catch-22? No, it's not, Your Honor, because he could have submitted other evidence to show the birth of this child. Well, it wouldn't be a birth certificate, though, would it? Exactly. Especially not a fraudulent one that, on two occasions, the DHS-FDL laboratory indicated were counterfeit and altered. Look, I don't understand. I don't understand you at all. Okay. He can't get a valid birth certificate because if he does, then he's confessed to violating their policy, right? Well, I don't know about the confessing for the violating. Well, I understand. If you're only allowed to have one child, I mean, there are exceptions, of course, but if he's only allowed to have one child, and he submits the birth certificate for the second child, he's in serious trouble, right? He's from Fujian, right? Well, you know, they can be very tough on people who violate the one-child policy, right? It depends. So he can't submit a valid birth certificate. So what is he supposed to do? He could have submitted other evidence to support. Like what? Any affidavits that support that the child was actually... Affidavits from whom? From anyone. But he didn't. What do you mean anyone? Not everybody in Fujian knows about the second child. Yes, you're right, Your Honor. So who is he supposed to get the affidavits from? Well, he did submit an affidavit from his wife, which also indicated that because of the violation, that she wasn't able to take the child for DNA testing, and also the affidavit for Meredith that he submitted. But he was fully aware that he could not obtain valid documents when he requested his father to go to an acquaintance to pay for a birth certificate. He was very aware that these documents were not going to be validly issued by the Chinese government. Of course they weren't. That's the whole point. He cannot get a valid birth certificate. Yes. He needs something else, like an invalid birth certificate. Well, Your Honor, here this court has held that if the petitioner submitted a document that it should have known or suspected was fraudulent, that that could support an adverse credibility finding, and here he should have known, and he did, in fact, know that the document was not going to be a valid document. Was he advised by counsel at the time? Well, counsel did indicate, after the first FDL report, Attorney Ming did indicate that the document appeared, quote-unquote, useless. She never, from my understanding, never actually Wouldn't she know that you couldn't get a second valid birth certificate? Well, in her response, she indicated that the documents appeared to be authentic. It wasn't until the FDL actually did its examination of the documents that it noticed that the watermarks in the specimen was different than the ones that were provided by the counsel. How was he supposed to know something his lawyer didn't even know? Because he testified to that he knew he was not going to be able to obtain these documents from the Chinese government. But he was told to get one, so what do you do? Well, he was told to get evidence of the birth of this child, not necessarily a birth certificate. I see my time has expired. Thank you. Okay, thank you very much, Ms. Jones. Mr. Brooke, do you have anything further? Judge Kenney, to answer your question, here's the quote from the asylum application, or excuse me, from the immigration judge, who I think got this right on this point. The respondent asserted in his I-589 that the government forced my wife to have sterilization and my son cannot be registered in the household. Then he testified that his wife would be forced to have sterilization if she was caught. So that's the difference. And with respect to this issue of him proving the fact that he has a son, at the end of my reply I go into the portions of the record that do discuss in what other ways he does prove that he has a son. So there's the testimony of Mr. Meredith, there's his own testimony, and there's photos of the petitioner's son, as well as the government noted an affidavit from the wife. And I think that's all I have to say, unless this Court has any other questions for me. Okay, well, thank you very much, Mr. Brooke. Thank you.